1
2
3
4
5
6
7
8          **IN THE UNITED STATES DISTRICT COURT**
9          **FOR THE EASTERN DISTRICT OF CALIFORNIA**
10
11  BRIANA GARCIA, et al.,                    CASE NO. CV F 08-1720 LJO SKO
12              Plaintiffs,                    **SUMMARY JUDGMENT DECISION**
        vs.                                    (Doc. 50.)
13
    CITY OF CERES, et al,
14
                Defendants.
15  _____/
16                          **INTRODUCTION**

17          Defendants City of Ceres ("City") and six of its police officers seek summary judgment on lone

18  plaintiff Mario Armendariz' ("Mr. Armendariz'") excessive force and inadequate training and

19  supervision claims arising from his arrest.  Mr. Armendariz claims that "there exists genuine issues of

20  material facts that are subject to substantial controversy which support" Mr. Armendariz' claims.  This

21  Court considered defendants' summary judgment motion of the record[1] and VACATES the June 22,

22  2010 hearing, pursuant to Local Rule 230(g).  For the reasons discussed below, this Court GRANTS

23  defendants summary judgment.

24  _____

25          [1]        This Court carefully reviewed and considered all arguments, points and authorities, declarations, testimony,
    statements of undisputed facts and responses thereto, objections and other papers filed by the parties.  Omission of reference
26  to an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the argument,
    document, objection or paper.  This Court thoroughly reviewed, considered and applied the evidence it deemed admissible,
27  material and appropriate for summary judgment.  Unless otherwise noted, this Court does not rule on objections in a summary
    judgment context.
28

                                            1

**BACKGROUND**

**The Parties**

Mr. Armendariz is the sole remaining plaintiff after four other plaintiffs dismissed their claims.

Defendant Jose Berber ("Sgt. Berber") is a City Police Department sergeant and has been a City police officer for 12 years.  Defendants Michael Perez ("Officer Perez"), Brian Ferreira ("Officer Ferreira"), Julio Amador ("Officer Amador"), Chris Melton ("Officer Melton") and Vanessa Garcia ("Officer Garcia") are Ceres Police Department officers and have between three to five years experience with the City.[2]

**Dispatch To Loud Party**[3]

On September 8, 2007 at approximately 12:41 a.m., Sgt. Berber and Officers Perez and Amador were dispatched to a Ceres residence for a complaint of loud music.  When they arrived at the residence, Sgt. Berber and Officers Perez and Amador heard loud music and voices coming from the residence. No one responded to Officer Perez and Amador's knocks on the residence's front door.  Sgt. Berber and Officers Perez and Amador attempted to make contact with persons inside the residence for five minutes with no response.  Through the front glass door, they observed individuals inside the residence make obscene gestures, yell obscenities, and dance.

Sgt. Berber and Officers Perez and Amador proceeded to issue citations to vehicles parked illegally on the street.  After 30 minutes, several individuals exited the front door.  Officer Perez asked their ages, and a female stated that she was age 20 and had been drinking.  Officer Perez stated in his declaration that as he prepared to take the female's name, "a mass number of irate people began to exit" the residence.

Officers Ferreira, Melton and Garcia responded to a call to assist Sgt. Berber and Officers Perez and Amador.  Officers Perez and Ferreira entered the residence.  Former plaintiff BRIANA Garcia ("Ms. Garcia") identified herself as the homeowner and person responsible for the residence.  Officer Perez informed Ms. Garcia that she was under arrest for contributing to the delinquency of a minor.  Officer

---

[2]        Sgt. Berber and Officers Perez, Ferreira, Amador, Melton and Garcia will be referred to collectively as the "defendant officers."  The City and defendant officers will be referred to collectively as "defendants."

[3]        The following factual recitation is derived generally from the defendant officers' unchallenged declarations.

1   Perez asked Ms. Garcia to step outside the residence, and she responded that she was not going outside.

2   Mr. Armendariz stood next to Ms. Garcia and stated that she did not need to leave and they were doing

3   nothing wrong.  Officer Perez observed that Mr. Armendariz appeared intoxicated due to slurred speech

4   and trouble standing.  According to Sgt. Berber, the crowd became loud and out of control.

5        Sgt. Berber and Officer Perez again asked Ms. Garcia to step outside the residence.  Sgt. Berber

6   held Ms. Garcia's left wrist and Officer Perez held her right wrist and escorted her outside the residence.

7   Officer Perez handcuffed Ms. Garcia, explained why he arrested her, and placed her in the back of his

8   patrol car.

9                                   **Struggle With Mr. Armendariz**

10       The defendant officers started to clear the residence and told people to leave as the party was

11  over.  Mr. Armendariz was by the residence's front door and told Officer Ferreira that he was not going

12  outside to be arrested for drunk in public.  Officers Ferreira and Amador attribute Mr. Armendariz to

13  have yelled: "I know my rights, I'm in the military."  Mr. Armendariz approached Officer Amador, and

14  Officer Ferreira notes in his declaration that "he appeared to puff up his chest and clenched his fists,

15  taking a fighting stance."  Officer Amador continued to tell Mr. Armendariz to back away but Mr.

16  Armendariz did not comply.

17       Officer Ferreira believed that Mr. Armendariz was about to assault Officer Amador.  Officer

18  Ferreira grabbed Mr. Armendariz' shoulder and told him to leave the residence.  Mr. Armendariz moved

19  toward Officer Ferreira, pushed Officer Ferreira's chest with both hands, and took a fighting stance.

20  Officer Ferreira attributes Mr. Armendariz to have stated: "Fuck you dog, I'm in the military."

21       Officer Ferreira attempted to grab Mr. Armendariz' hand but Mr. Armendariz pulled away and

22  pushed Officer Ferreira again.  Officer Ferreira attempted to grab Mr. Armendariz around his torso, and

23  Mr. Armendariz continued to try to pull away, turned his back toward Officer Ferreira, and attempted

24  to kick Officer Ferreira with his heel.  Officer Ferreira and Mr. Armendariz fell into a piece of furniture

25  and wall in the residence's front entry way.  Officer Ferreira ordered Mr. Armendariz to "stop resisting,"

26  and Mr. Armendariz continued to struggle and threw elbows toward Officer Ferreira.

27       Officer Ferreira threw distractionary strikes with his elbow but Mr. Armendariz continued to

28  fight.  Sgt. Berber deployed his Taser and placed it on Mr. Armendariz' back.  Mr. Armendariz

3

continued to fight and resist, and Sgt. Berber activated his Taser on Mr. Armendariz' back.  Mr. Armendariz attempted to grab the Taser from Sgt. Berber's hand, and Sgt. Berber returned the Taser to his holster and attempted to control Mr. Armendariz' right arm as he continued to fight and struggle.

As Mr. Armendariz continued to kick and attempt to get off the floor, Sgt. Berber controlled Mr. Armendariz to enable Officer Ferreira to place handcuffs on Mr. Armendariz' arms behind his back. Officer Ferreira escorted Mr. Armendariz outside the residence where Mr. Armendariz continued to be belligerent and uncooperative.  Officer Ferreira attributes Mr. Armendariz to have "continued to yell at the other people still in the residence inciting a riot."

**Mr. Armendariz' Arrest**

Mr. Armendariz pulled away, cursed and kicked backwards at Officer Fernier, who led Mr. Armendariz to his patrol car.  Officer Ferreira attributes Mr. Armendariz to have challenged him to a fight if he took off Mr. Armendariz' handcuffs.  Officer Ferreira describes Mr. Armendariz as "very uncooperative and becoming combative."  Officer Ferreira pepper sprayed Mr. Armendariz 24 inches from Mr. Armendariz' face.

Officer Ferreira placed Mr. Armendariz in the back of Officer Ferreira's patrol car and returned to the residence to assist the other defendant officers.  Sgt. Berber describes the crowd as "very difficult to control" and "becoming more aggressive."

Officer Ferreira drove Mr. Armendariz to a fire station to detox Mr. Armendariz and dilute the pepper spray.  Officer Ferreira notes that during the drive, Mr. Armendariz "continued to be verbally aggressive toward me and again challenged me to a fight."  Officer Amador was also at the fire station and observed that Mr. Armendariz "was still being verbally aggressive with Officer Ferreira at the fire station."

After Mr. Armendariz received a medical clearance, he was booked for assault on a peace officer (Cal. Penal Code, § 243(b)), fighting (Cal. Penal Code, § 415), and resisting arrest (Cal. Penal Code, § 148).  In addition to Mr. Armendariz, several others were arrested.

In his declaration, Officer Amador notes he had no "physical contact" with Mr. Armendariz. Officers Melton and Garcia declare that they had "no physical or verbal contact" with Mr. Armendariz.

On September 8, 2008, Mr. Armendariz pled guilty to remaining present at a riot, rout or

4

1    unlawful assembly after warning to disperse (Cal. Penal Code, § 409).

2                                **Mr. Armendariz' Claims**

3           Mr. Armendariz' sole remaining 42 U.S.C. § 1983 claim alleges: (1) excessive force and

4    unreasonable seizure and arrest; and (2) *Monell* liability for "failure to adequately train or supervise

5    employees . . . concerning the use of force and the legality of search and seizure activities."  Mr.

6    Armendariz seeks to recover for personal body injuries, mental suffering and distress as well as punitive

7    damages.

8                                  **DISCUSSION**

9                          **Summary Judgment Standards**

10          F.R.Civ.P. 56(b) permits a "party against whom relief is sought" to seek "summary judgment on

11   all or part of the claim."  "A district court may dispose of a particular claim or defense by summary

12   judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense."

13   *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

14          Summary judgment is appropriate when there exists no genuine issue as to any material fact and

15   the moving party is entitled to judgment as a matter of law.  F.R.Civ.P. 56(c); *Matsushita Elec. Indus.*

16   *v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific*

17   *Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to

18   "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial."

19   *Matsushita Elec.,* 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin*

20   *Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

21          On summary judgment, a court must decide whether there is a "genuine issue as to any material

22   fact," not weigh the evidence or determine the truth of contested matters.  F.R.Civ.P. 56(c); *Covey v.*

23   *Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); *see Adickes v. S.H. Kress & Co.*, 398

24   U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct.

25   486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984).

26   The evidence of the party opposing summary judgment is to be believed and all reasonable inferences

27   that may be drawn from the facts before the court must be drawn in favor of the opposing party.

28   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986); *Matsushita*, 475 U.S. at 587,

106 S.Ct. 1348.  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252, 106 S.Ct. 2505.

To carry its burden of production on summary judgment, a moving party "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Indus. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "[T]o carry its ultimate burden of persuasion on the motion, the moving party must persuade the court that there is no genuine issue of material fact." *Nissan Fire*, 210 F.3d at 1102; *see High Tech Gays*, 895 F.2d at 574.  "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial." *Nissan Fire*, 210 F.3d at 1102-1103; *see Adickes*, 398 U.S. at 160, 90 S.Ct. 1598. "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense." *Nissan Fire*, 210 F.3d at 1103; *see High Tech Gays*, 895 F.2d at 574.  "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) ("Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")

"But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." *Nissan Fire*, 210 F.3d at 1103; *see Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp.*

*v. Loral Corp.*, 718 F.2d 897, 902 (quoting *First Nat'l Bank v. Cities Service Co.*, 391 U.S. 253, 288-289, 88 S.Ct. 1575, 1592 (1968)).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient."  *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

As discussed below, Mr. Armendariz has failed to produce admissible evidence to support his claims or to create a genuine issue of material fact.  Mr. Armendariz has failed to challenge the defendant officers' declarations, literally presents no evidence, and merely relies on the declaration of his counsel which offers nothing substantial.[4]  Mr. Armendariz appears to object that defendants support their summary judgment motion with Mr. Armendariz' deemed admissions resulting from his failure to respond or deny Officer Amador's requests for admission given potential for substituted counsel.[5]  Although the deemed admissions support summary judgment for defendants, this Court relied chiefly on the unchallenged declarations of the defendant officers.  As such, Mr. Armendariz lacks grounds to continue trial or reopen discovery as he suggests.  Failure to acquire substituted counsel fails to excuse the absence of meaningful opposition to summary judgment, especially given that Mr. Armendariz' current counsel participated in selecting discovery, motion and trial dates set in the scheduling conference order.

**Defendant Officers' Excessive Force**

Defendants contend that no facts exist to support Mr. Armendariz' excessive force claim in that the force used was "necessary to effect the arrest of the combative and resisting" Mr. Armendariz.  Defendants point to the absence of a "cognizable claim under the Fourth Amendment" and "conflicting

---

[4]    Mr. Armendariz failed to comply with Local Rule 260(b): "Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other documents relied upon in support of that denial." Mr. Armendariz merely states his disagreement with certain of defendants' undisputed facts without providing evidence to dispute defendants' version of events.

[5]    A question whether new counsel would replace Mr. Armendariz' current counsel does not excuse responding to requests for admission.  "Failure to respond to requests for admissions results in automatic admission of the matters requested. . . . No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing."  *Federal Trade Comm. v. Medicor LLC*, 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002).  "The failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of the case."  *In re Carney*, 258 F.3d 415, 421 (5th Cir. 2001).  Facts deemed admitted because of failure to respond to requests for admission may support summary judgment.  *Nick-o-Val Music Co., Inc. v. P.O.S. Radio, Inc.*, 656 F.Supp. 826, 828 (M.D. Fla. 1987).

1    evidence to show there is a material issue of fact."

2                              ***Section 1983 Requirements***

3          "Section 1983 imposes two essential proof requirements upon a claimant:  (1) that a person

4    acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the

5    claimant of some right, privilege, or immunity protected by the Constitution or laws of the United

6    States." *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988).

7           "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for

8    vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807,

9    811 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n. 3 (1979)).

10   Section 1983 and other federal civil rights statutes address liability "in favor of persons who are deprived

11   of 'rights, privileges, or immunities secured' to them by the Constitution." *Carey v. Piphus*, 435 U.S.

12   247, 253, 98 S.Ct. 1042 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417, 96 S.Ct. 984, 996

13   (1976)).  "The first inquiry in any § 1983 suit, therefore, is whether the plaintiff has been deprived of

14   a right 'secured by the Constitution and laws.'" *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689

15   (1979).  Stated differently, the first step in a section 1983 claim is to identify the specific constitutional

16   right allegedly infringed. *Albright*, 510 U.S. at 271, 114 S.Ct. at 811.  "Section 1983 imposes liability

17   for violations of rights protected by the Constitution, not for violations of duties of care arising out of

18   tort law." *Baker*, 443 U.S. at 146, 99 S.Ct. 2689.

19          There is no dispute that the defendant officers acted under color of law.  As such, attention turns

20   to whether the defendant officers deprived Mr. Armendariz of a constitutional right.  The facts indicate

21   that the constitutional right at issue is whether the force upon Mr. Armendariz was reasonable.  There

22   are no issues as to the reasonableness of Mr. Armendariz being taken into custody given his guilty plea.

23                              ***Reasonableness Standard***

24          In *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865 (1989), the United States Supreme

25   Court determined that section 1983 excessive force claims are addressed under the Fourth Amendment's

26   reasonableness standard, not the Fourteenth Amendment's substantive due process standard:

27          [A]ll claims that law enforcement officers have used excessive force – deadly or not –
             in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should
28          be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than

                                              8

under a "substantive due process" approach.  Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

In *Graham*, 490 U.S. at 396-397, 109 S.Ct. 1865, the United States Supreme Court provided guidance on reasonableness of use of force:

> Because "[t]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . however, its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. . . .
>
> The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with 20/20 vision of hindsight. . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.
>
> As in other Fourth Amendment contexts, however, the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.  (Citations omitted.)

A section 1983 excessive force plaintiff must establish, as part of his affirmative case, the unreasonableness of the force used. *Miller v. Taylor,* 877 F.2d 469, 471-472 (6th Cir.1989) ("Plaintiff here was required to show that [defendant] Officer Taylor's use of force was unjustified in order to state a constitutional deprivation.").

To determine whether a plaintiff's Fourth Amendment rights were violated, a court must consider whether the defendant officers had probable cause to believe that the plaintiff posed a significant threat of death or serious physical injury to themselves or others, and used reasonable force to alleviate that threat.  *Herrera v. Las Vegas Metropolitan Police Dept.,* 298 F.Supp.2d 1043, 1049-1050 (D. Nev. 2004).  "[A]s the text of the Fourth Amendment indicates, the appropriate inquiry is whether the officers acted reasonably, not whether they had less intrusive alternatives available to them." *Scott v. Henrich*, 39 F.3d 913, 915 (9th Cir. 1994), *cert. denied*, 515 U.S. 1159, 115 S.Ct. 2612 (1995).  "An officer cannot be expected to accurately anticipate all of the possible responses a subject may have to his commands and then tailor his actions accordingly in order for his conduct to fall into the category of what is

1  considered reasonable." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1169 (9th Cir. 1996), *overruled*

2  *on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997).

3      "However, a simple statement by an officer that he fears for his safety or the safety of others is

4  not enough; there must be objective factors to justify such a concern." *Deorle v. Rutherford*, 272 F.3d

5  1272, 1281 (9th Cir. 2001), *cert. denied*, 536 U.S. 958, 122 S.Ct. 2660 (2002). The Ninth Circuit has

6  admonished that "a court may not simply accept what may be a self-serving account by the police

7  officer.  It must also look at the circumstantial evidence that, if believed, would tend to discredit the

8  police officer's story, and consider whether this evidence could convince a rational factfinder that the

9  officer acted reasonably." *Scott*, 39 F.3d at 915; *see Ting v. United States*, 927 F.2d 1504, 1510 (9th Cir.

10  1991) ("We need not decide whether the shooting of [plaintiff] Ting would be objectively reasonable

11  under [officer] Burns' version of the facts because material questions exist regarding the circumstances

12  of the shooting.")

13      The following demonstrates the reasonableness of the force used on Mr. Armendariz:

14  1.    Mr. Armendariz told Officer Perez that Ms. Garcia did not leave the residence;

15  2.    Mr. Armendariz appeared intoxicated to defendant officers;

16  3.    A large crowd at the residence was loud and ignored the defendant officers' attempts to

17        control the situation;

18  4.    Mr. Armendariz disobeyed Officer Ferreira's directive to leave the residence;

19  5.    Mr. Armendariz yelled: "I know my rights, I'm in the military";

20  6.    Mr. Armendariz approached Officer Amador with clenched fists in a fighting stance;

21  7.    Mr. Armendariz disobeyed Officer Amador's directives to back off;

22  8.    Officer Ferreira was compelled to intercede to prevent Mr. Armendariz to assault Officer

23        Amador;

24  9.    Mr. Armendariz pushed with both hands Officer Ferrari's chest and took a fighting

25        stance;

26  10.    Mr. Armendariz stated: "Fuck you dog, I'm in the military";

27  11.    Mr. Armendariz resisted Officer Ferrari's attempts to stop Mr. Armendariz' advances;

28  12.    Mr. Armendariz disobeyed Officer Ferreira's directives to "stop resisting";

13.     Mr. Armendariz continued to struggle and threw elbows at Officer Ferreira despite Officer Ferreira's distractionary elbow strikes;

14.     Sgt. Berber was compelled to deploy his Taser;

15.     Mr. Armendariz attempted to grab Sgt. Berber's Taser;

16.     Mr. Armendariz continued to resist until placed into handcuffs;

17.     Mr. Armendariz remained belligerent and uncooperative after handcuffed and yelled to incite others;

18.     When handcuffed, Mr. Armendariz kicked at Officer Ferreira and challenged Officer Ferreira to a fight;

19.     Officer Ferreira was compelled to pepper spray Mr. Armendariz; and

20.     After being pepper sprayed, Mr. Armendariz remained aggressive and combative and again challenged Officer Ferreira to a fight.

The defendant officers had probable cause to believe that Mr. Armendariz posed a threat of serious physical harm. He required two officers to handcuff him and continued to resist and make threats after being handcuffed. Mr. Armendariz endangered officers, sought a confrontation, and refused to obey directives to stop resisting. The totality of the circumstances reveal that Mr. Armendariz' actions necessitated the means employed by the defendant officers to accomplish his arrest. The defendant officers' actions were objectively reasonably under the circumstances they confronted, including potential mayhem if the ringleaders were not subdued. No other viable alternative uses of force were present. Nothing discredits the defendant officers' version of events. Mr. Armendariz fails to substantiate that the reasonableness issue is "factual' in the absence of evidence to controvert the defendant officers' version of events. In light of the significant threat which Mr. Armendariz posed, the objective factors demonstrate that the defendant officers reasonably exercised their chosen force on him to alleviate his threats and further potential violence.

### The City's *Monell* Liability

Defendants contend that the City is not subject to liability for excessive force in the absence of a custom or policy to support *Monell* liability. Defendants rely on the declaration of City Police Chief Art De Werk ("Chief De Werk"), who describes himself as "policymaker" for "all aspects of police

administration and conduct."  Chief De Werk declares that:

1.   The City has valid Use of Force and Citizen Complaint policies;

2.   The City "has never had a policy, practice or custom, written or otherwise, authorizing or condoning of any kind of use of excessive force, unlawful stop, unlawful arrest, unlawful detention, unlawful seizure or unlawful arrest";

3.   The City, prior to hiring a police officer, conducts "an extensive background investigation" pursuant to Commission of Peace Officer Standards and Training ("POST") guidelines;

4.   City police officers attend POST-certified academies which comply with California law and POST standards;

5.   The defendant officers have met or exceeded the number of hours of continuing education required by POST;

6.   The City "closely monitors arrest procedures and use of force, and investigations by its officers";

7.   The City's investigation revealed that the defendant officers' actions "were consistent with, and did not violate," the City's Use of Force policy;

8.   Chief De Werk has "taken no capable action or inaction with regard to the hiring, training, supervision, control or discipline of subordinates" and has not failed to remove an unfit officer;

9.   Chief De Werk has "not condoned, ratified or encouraged unlawful use of force, arrests, detentions, or seizures or searches or an infringement on the Fourth Amendment rights of anyone";

10.   The City "has not directly or indirectly approved or ratified any unlawful, deliberate, malicious, reckless or wanton conduct" of the defendant officers; and

11.   The City monitors and assures prevention of unlawful arrests, use of force and other misconduct with its review procedures, supervision of police officers, internal affairs investigations, citizen complaint procedure, disciplinary proceedings, extensive and continuous training, and compliance with POST standards.

12

1    A local government unit may not be held liable for the acts of its employees under a respondeat

2 superior theory. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018

3 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct.

4 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "Federal case law

5 has long barred respondeat superior liability against state actors in suits brought under 42 U.S.C. §

6 1983." *Fed. of African American Contractors v. City of Oakland*, 96 F.3d 1204, 1214 (9th Cir. 1996).

7 Claimants suing state actors under 42 U.S.C. § 1983 "must establish that their alleged injury was the

8 result of a 'policy or custom' of that state actor." *African American Contractors*, 96 F.3d at 1215.

9    "[A] municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell*, 436 U.S.

10 at 691, 98 S.Ct. at 2018. The local government unit "itself must cause the constitutional deprivation."

11 *Gilette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992), *cert. denied*, 510 U.S. 932, 114 S.Ct. 345

12 (1993). Because liability of a local governmental unit must rest on its actions, not the actions of its

13 employees, a plaintiff must go beyond the respondeat superior theory and demonstrate that the alleged

14 constitutional violation was the product of a policy or custom of the local governmental unit. *City of*

15 *Canton, Ohio v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197 (1989); *Pembaur v. City of Cincinnati*, 475

16 U.S. 469, 478-480, 106 S.Ct. 1292 (1986). To maintain a civil rights claim against a local government,

17 a plaintiff must establish the requisite culpability (a "policy or custom" attributable to municipal

18 policymakers) and the requisite causation (the policy or custom as the "moving force" behind the

19 constitutional deprivation). *Monell*, 436 U.S. at 691-694, 98 S.Ct. 2018; *Gable v. City of Chicago*, 296

20 F.3d 531, 537 (7th Cir. 2002).

21    An actionable policy or custom is demonstrated by:

22    1.    An "express policy that, when enforced, causes a constitutional deprivation," *Baxter v.*

23         *Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994);

24    2.    A "widespread practice that, although not authorized by written law or express municipal

25         policy, is so permanent and well settled to constitute a 'custom or usage' with the force

26         of law," *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915 (1988)

27         (plurality opinion); or

28    3.    Constitutional injury caused by a person with "final policymaking authority," *Praprotnik*,

1    485 U.S. at 123, 108 S.Ct. 915.

2    "[E]xistence of a policy, without more, is insufficient to trigger local government liability."

3    *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992).  "The description of a policy or custom and its

4    relationship to the underlying constitutional violation, moreover, cannot be conclusory; it must contain

5    specific facts."  *Spiller v. City of Texas City, Police. Dept.*, 130 F.3d 162, 167 (5th Cir. 1997).   To

6    impose *Monell* liability, a plaintiff "must identify the policy, connect the policy to the city itself and

7    show that the particular injury was incurred because of the execution of that policy. Plaintiff must, of

8    course, prove that his injury was caused by city policy."  *Bennett v. City of Slidell*, 728 F.2d 762, 767

9    (5th Cir. 1984).

10   However, "municipal liability may be imposed for a single decision by municipal policymakers

11   under appropriate circumstances."  *Pembaur*, 475 U.S. 469, 480, 106 S.Ct. 1292 (1986).  "More

12   importantly, where action is directed by those who establish governmental policy, the municipality is

13   equally responsible whether that action is to be taken only once or to be taken repeatedly."  *Pembaur*,

14   475 U.S. at 481, 106 S.Ct. 1292.  Local government liability is based on "whether governmental officials

15   are final policymakers for the local government in a particular area, or on a particular issue."  *McMillan*

16   *v. Monroe County, Ala.*, 520 U.S. 781, 785, 117 S.Ct. 1734 (1997).

17   "In addition, a local governmental entity may be liable if it has a 'policy of inaction and such

18   inaction amounts to a failure to protect constitutional rights.'"  *Lee v. City of Los Angeles*, 250 F.3d 668,

19   681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)).  A local government

20   entity may be liable under section 1983 "if its deliberate policy caused the constitutional violation

21   alleged."  *Blankenhorn v. City of Orange*, 485 F.3d 463, 484 (9th Cir. 2007).  As to failure to train

22   employees, the Ninth Circuit Court of Appeals has explained:

23       The custom or policy of inaction, however, must be the result of a "conscious," . . . or
         "'deliberate choice to follow a course of action . . .  made from among various
24       alternatives by the official or officials responsible for establishing final policy with
         respect to the subject matter in question.'"
25
             . . .
26
         A local governmental entity's failure to train its employees can also create § 1983
27       liability where the failure to train "amounts to deliberate indifference to the rights of
         persons" with whom those employees are likely to come into contact. . . . "[F]or liability
28       to attach in this circumstance the identified deficiency in a [local governmental entity's]

14

1    training program must be closely related to the ultimate injury." . . . In other words, a
2    plaintiff must show that his or her constitutional "injury would have been avoided" had
 the governmental entity properly trained its employees. . . .

3   *Lee*, 250 F.3d at 681 (citations omitted.)

4     A section 1983 plaintiff alleging a policy of failure to train peace officers must show: (1) he/she

5   was deprived of a constitutional right; (2) the local government entity had a training policy that amounts

6   to deliberate indifference to constitutional rights of persons' with whom its peace officers are likely to

7   come into contact; and (3) his/her constitutional injury would have been avoided had the local

8   government unit properly trained those officers. *Blankenhorn*, 485 F.3d at 463.

9     The record lacks facts of a requisite policy or custom attributable to City and which was a

10  "moving force" behind an actionable constitutional deprivation. Nothing suggests a policy or custom

11  which endangers Fourth Amendment or related rights. Likewise, nothing suggests Mr. Armendariz'

12  alleged injuries arose from a City policy. Mr. Armendariz fails even to attempt to identify an actionable

13  policy or custom. The record reveals no facts to question whether the defendant officers were

14  inadequately trained or supervised to amount to a constitutional deprivation. In short, there are no

15  factual issues to avoid summary judgment for the City on *Monell* liability.

16           **Qualified Immunity**

17    The defendant officers contend that they are entitled to qualified immunity given that Mr.

18  Armendariz posed a threat to officer safety. Mr. Armendariz responds that defendants "have not

19  substantiated qualified immunity." Defendants note that Mr. Armendariz "has offered no credible

20  argument, facts or authority on the issues of qualified immunity."

21    Qualified immunity protects section 1983 defendants "from liability for civil damages insofar

22  as their conduct does not violate clearly established statutory or constitutional rights of which a

23  reasonable person would have known." *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir.

24  2004), *overruled on other grounds, Action Apt. Assoc., Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d

25  1020 (9th Cir. 2007). The "heart of qualified immunity is that it spares the defendant from having to go

26  forward with an inquiry into the merits of the case. Instead, the threshold inquiry is whether, assuming

27  that what the plaintiff asserts the facts to be is true, any allegedly violated right was clearly established."

28  *Kelley v. Borg*, 60 F.3d 664, 666 (9th Cir. 1995).

The issue of qualified immunity is "a pure question of law." *Elder v. Holloway*, 510 U.S. 510, 514, 114 S.Ct. 1019 (1994); *Romero v. Kitsap County*, 931 F.2d 624, 627-628 (9th Cir. 1991). The Ninth Circuit has explained:

> Under *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), the first step in the qualified immunity analysis is "to consider the materials submitted in support of, and in opposition to, summary judgment in order to decide **whether a constitutional right would be violated** if all facts are viewed in favor of the party opposing summary judgment." *Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001). "If no constitutional violation is shown, the inquiry ends." *Cunningham v. City of Wenatchee*, 345 F.3d 802, 810 (9th Cir. 2003). On the other hand, if "the parties' submissions" create a triable issue of whether a constitutional violation occurred, the second question is "**whether the right was clearly established**." *Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. A constitutional right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202, 121 S.Ct. 2151.

*Squaw Valley*, 375 F.3d at 943 (bold added).

The "contours" of the allegedly violated right "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . [I]n the light of preexisting law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 3039 (1987). "The question is what the officer reasonably understood his powers and responsibilities to be, when he acted under clearly established standards." *Saucier v. Katz*, 533 U.S. 194, 208, 121 S.Ct. 2151 (2001).

"If the officer's mistake as to what the law requires is reasonable, however, the officer is entitled to the immunity defense." *Saucier*, 533 U.S. at 205, 121 S.Ct. 2151. "The relevant inquiry is whether a reasonable government official could have believed that his conduct was lawful, in light of clearly established law and the information he possessed." *Thorsted v. Kelly*, 858 F.2d 571, 573 (9th Cir. 1988). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S.Ct. 596, 599 (2004). "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they have violated the Constitution." *Saucier*, 533 U.S. 194, 121 S.Ct. at 2158. Peace officers in "tense situations" are afforded "broad discretion" and "immunity even when officers make mistakes." *See Jeffers v. Gomez*, 267 F.3d 895, 909 (9th Cir. 2001).

"If the law did not put the officer on notice that his conduct would be clearly unlawful, summary

1    judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202, 121 S.Ct. at 2156-

2    2157. However, determination of qualified immunity on summary judgment is improper if there are

3    disputes "as to the facts and circumstances." *See Acosta v. City and County of San Francisco*, 83 F.3d

4    1143, 1147, n. 10 (9th Cir.), *cert. denied*, 519 U.S. 1009, 117 S.Ct. 514 (1996).

5         Turning to an excessive force claim, the first stage of the qualified immunity analysis inquires

6    "whether it would be objectively reasonable for the officer to believe that the amount of force employed

7    was required by the situation he confronted. . . . That is, the first step in the analysis is an inquiry into

8    the objective reasonableness of the officer's belief in the *necessity* of his actions, and there is no Fourth

9    Amendment violation if the officer can satisfy this standard." *Wilkins v. City of Oakland*, 350 F.3d 949,

10   954 (9th Cir. 2003), *cert. denied*, 125 S.Ct. 43 (2004) (italics in original).

11        Although "reasonableness traditionally is a question of fact for the jury," a defendant can prevail

12   on summary judgment if the court "concludes, after resolving all factual disputes in favor of the plaintiff,

13   that the officer's use of force was objectively reasonable under the circumstances." *Scott*, 39 F.3d at

14   915.

15        As outlined above, the defendant officers used reasonable force to subdue the combative,

16   disobedient Mr. Armendariz and to help simmer combustible circumstances. Considering all facts in

17   Mr. Armendariz' favor, no constitutional violation arises. Mr. Armendariz interfered with questioning

18   Ms. Garcia, disobeyed directives to leave the residence and to stop advances, pushed an officer,

19   provoked a confrontation to require physical restraint, continued to fight and resist after physically

20   engaging two officers, kicked at an officer and challenged him to a fight when handcuffed, and remained

21   aggressive and confrontational to require pepper spray. No clearly established constitutional right

22   prohibited the defendant officers' use of force under such circumstances. Mistakes, if any, by the

23   defendant officers were reasonable. No disputes arise to avoid application of qualified immunity which

24   further supports summary judgment for the defendant officers. Mr. Armendariz does not challenge

25   meaningfully the defendant officers' entitlement to qualified immunity.

26   **CONCLUSION AND ORDER**

27        For the reasons discussed above, this Court:

28        1.     GRANTS defendants summary judgment;

1       2.     DIRECTS the clerk to enter judgment against plaintiff Mario Armendariz and in favor

2              of defendants City of Ceres, Jose Berber, Michael Perez, Brian Ferreira, Julio Amador,

3              Chris Melton and Vanessa Garcia and to close this action; and

4       3.     VACATES the August 24, 2010 pretrial conference and October 4, 2010 trial.

5       IT IS SO ORDERED.

6   **Dated:**   **June 16, 2010**               **/s/ Lawrence J. O'Neill**
                                          UNITED STATES DISTRICT JUDGE